■ YONKERS CITY POST No. 1666, VETERANS OF FOREIGN WARS OF THE UNITED STATES, INC., Respondent-Appellant, v JOSANTH REALTY CORPORATION et al., Respondents-Appellants, and METROPOLITAN TITLE GUARANTEE Co. et al., Appellants-Respondents. — In an action, *inter alia,* to recover money damages from a seller of real property for breach of a covenant against encumbrances and from a title insurance company under its title insurance policy, the parties cross-appeal from a judgment of the Supreme Court, Westchester County (Leggett, J.), dated December 21, 1982, which, after a nonjury trial, (1) granted judgment to plaintiff against the defendants on the third and ninth causes of action; (2) dismissed the other causes of action; (3) directed that plaintiff recover of defendants Josanth Realty Corporation (the seller) and Joseph Bottiglieri, and defendants Metropolitan Title Guarantee Co. and its successor-in-interest jointly and severally, the sum of $29,800, with specified interest; (4) directed that the title insurance companies, defendants Metropolitan and its successor, recover on their cross claim against defendant Josanth Realty Corp. and Joseph Bottiglieri, the sum of $29,800, and (5) directed that plaintiff be denied any prejudgment interest.

Judgment modified, on the law and the facts, by (1) reducing the principal award to plaintiff from $29,800 to $19,800; (2) striking the fifth decretal paragraph, which denies plaintiff

recovery of prejudgment interest, and substituting therefor a provision awarding plaintiff prejudgment interest from September 30, 1974, and (3) directing that the judgment awarded Metropolitan Title Guarantee Company on its cross claim against defendants Josanth Realty Corp. and Joseph Bottiglieri be reduced accordingly, i.e., from $29,800 to $19,800 plus interest awarded to plaintiff. As so modified, judgment affirmed, with one bill of costs payable by defendants to plaintiff, and matter remitted to Special Term for entry of an appropriate amended judgment.

On September 30, 1974, plaintiff purchased from defendant Josanth Realty Corp. the subject improved parcel of real property located on Yonkers Avenue, Yonkers, New York. The deed described a 100-by-100-foot parcel. The price was $135,000. Plaintiff paid the $135,000 by $60,000 cash and giving $75,000 purchase money mortgage, which Josanth assigned to Joseph Bottiglieri, its president.

The deed from Josanth to plaintiff was a bargain and sale deed, and contained a covenant in which the seller warranted that it "has not done or suffered anything whereby the said premises have been encumbered in any way whatsoever".

In connection with the transaction plaintiff requested and received from defendant title company, Metropolitan Title Guarantee Company, a certificate of title and a $135,000 title insurance policy which warranted that plaintiff had good title and clear title to the 100-by-100-foot parcel described in the deed and on schedule A of the title insurance policy.

The title policy's description of the parcel echoes the 100-by-100-foot parcel described in the deed and insures plaintiff against, *inter alia,* "all loss or damages not exceeding the amount of insurance stated herein * * * which the insured shall sustain by reason of any defect or defects of title affecting the premises described in Schedule A * * * excepting all loss and damage by reason of the * * * matters set forth in Schedule B".

In or about December, 1979, plaintiff discovered that there was a problem with its title. Further investigation by plaintiff revealed that on or about February 4, 1971, prior to the sale of the premises to plaintiff by Josanth, the State of New York, pursuant to a duly filed notice of appropriation and appropriation map, acquired a 1,488-square-foot portion of the subject property in fee, and, in addition, a 724-square-foot permament easement (for slopes) in the subject property. The State had awarded and paid to Josanth $46,000 for that 1971 taking.

Plaintiff, having thus discovered that, of the 10,000 square feet for which it had paid $135,000 in September, 1974 and

received a title insurance policy, 1,488 square feet in fact belonged to the State of New York and an additional 724 square feet was subject to a permanent State easement, commenced this suit against Josanth Realty Corp., Joseph Bottiglieri (individually and as president of Josanth) and the title insurance company. Josanth, Bottiglieri and the title insurance company interposed answers and cross-claimed against each other.

After a nonjury trial, the court rendered an oral decision on December 9, 1982. A judgment, dated December 21, 1982, was rendered on that decision. The judgment provides, *inter alia,* that plaintiff recover judgment against defendants on the third cause of action (against Josanth for breach of covenant against encumbrances) and ninth cause of action (against the title insurer, Metropolitan), that plaintiff recover against defendants Josanth Realty Corporation, Joseph Bottiglieri and the title company, jointly and severally, the sum of $29,800 with interest from December 9, 1982 (date of the trial court's decision) to December 20, 1982, a total of $29,889.40, and that defendant title company (on its cross claim) have judgment for that amount against defendants Josanth Realty Corp. and Joseph Bottiglieri. The judgment specifically denies prejudgment interest to plaintiff.

The parties have cross-appealed from specified portions of the judgment and have filed extensive briefs. We have examined the many points presented by the parties and find that the basic award of $29,800 to plaintiff should be reduced to $19,800, but that plaintiff should be awarded prejudgment interest from September 30, 1974, the date on which it purchased the premises for the price of $135,000.

In its oral decision, the trial court reasoned to the effect that plaintiff had bargained in good faith for and purportedly was sold a 10,000-square-foot property but, in fact, "for all practical purposes" had received approximately 7,800 square feet of unencumbered land; that owner Josanth had engaged in "double selling" — to the State for $46,000 and to plaintiff for $135,000; that "[w]hile it would be the easy way to use what the state paid", the State gives "too much money on some, too little on others". The court effectively rejected the appraisal value presented by the title company's appraisal expert. With respect to plaintiff's appraisal expert (who had treated the State's 1971 acquisition as a partial appropriation and had given "Before" and "After" values), the court stated that "many of the comparables really are not comparable".

The court concluded, however, that:

"I also do take one comparable which was vacant land, which does indicate that the value of vacant land approximately the

same size, 10,000 feet, would have, according to Mr. Adrian, a value of $8.41, rounding that off to $9, would come to an amount of approximately $19,800. I would have to add on to that, to be fair, an additional $10,000, which would in some way compensate the plaintiffs for the loss of permanent easement that was taken by virtue of the fact that it makes the land less marketable at some future time; if that some other use was to be made of it.

"To the best of my judgment, this is as fair as I can be."

While we find that an award of $19,800 was warranted by the evidence in this record, we find no basis for the court's addition of $10,000 to that amount. It is manifest that the court calculated the $19,800 award as follows:

| For fee taking: | 1,488 square feet, $9 per square foot | = | $13,392 |
| For the permanent easement: | 724 square feet, $9 per square foot | = | $ 6,516 |
| | | | $19,908.* |

Thus, the trial court's $19,800 necessarily includes the damages for the permanent easement (with the generous assumption that it was equivalent to a fee taking) and there is no basis for the $10,000 additional award for "the permanent easement".

Finally, we find that plaintiff was entitled to prejudgment interest from the date of plaintiff's purchase of the property, September 30, 1974. It was on that date that plaintiff parted with a total of $60,000 cash (inclusive of the down payment) and incurred a $75,000 purchase money mortgage obligation, on which payments commenced to be made. It was on that date that the seller received the $135,000 price for a 10,000-square-foot plot which, plaintiff later discovered, was actually an 8,512-square-foot plot subject to a 724-square-foot easement. Thus, plaintiff had received title to considerably less square footage than it had paid for and another portion of the square footage received was subject to the State's permanent easement (see *Wayside Nurseries v State of New York*, 36 AD2d 212). Unlike *Smirlock Realty Corp. v Title Guar. Co.* (97 AD2d 208), which involved the delayed impact of a condemnation of roadbeds of two public streets leading to the property owned by plaintiff therein and the taking of a small slice of land of a third public street leading to the property of the plaintiff, the plaintiff, at bar, incurred a direct, immediate loss and shortage at the time of closing of title. CPLR 5001 provides, in pertinent part: "Interest to verdict, report or decision.

* The trial court apparently rounded $19,908 to $19,800.

"(a) Actions in which recoverable. Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

"(b) Date from which computed. Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."

In *Smirlock* (97 AD2d 208, 242, *supra*) this court stated: "The key provision is the first sentence in CPLR 5001 (subd [b]). The first clause of that sentence supports plaintiff's position, since plaintiff's cause of action, at least theoretically, existed at the very time it purchased the property. However, the second clause states: 'except that interest upon damages incurred thereafter shall be computed from the date incurred'. As discussed, *supra,* plaintiff did not suffer any damage or loss as a result of the defect in title until after Pan Am made its last rent payment. Thus, interest on the sum representing the loss in value of the property should be computed from that date, namely April 14, 1972."

At bar, however, since plaintiff incurred its loss and the seller received its consideration at the time plaintiff purchased the property, plaintiff is entitled to prejudgment interest from the date of closing of title, September 30, 1974. Thompson, J. P., Bracken, Boyers and Lawrence, JJ., concur.